The title to the case is misleading, but not material. Madge L. Yeoman, James E. Yeoman, Lillian J. Yeoman, and Gussie Yeoman, having become of age, filed a petition in the original cause: In the Matter of Mrs. EllaYeoman Quick, Guardian (naming the above infants). They allege, among other things: (1) That Mrs. Ella Yeoman Quick had a life estate in certain lands (describing same), and they are entitled to the remainder. (2) That on or about 8 November, 1919, as guardian, she filed a petition with the clerk of Hoke County (setting forth a copy). That the clerk made an order, and the same was confirmed by the judge presiding of the Superior Court, allowing her, as guardian, to make a lien on their interest in remainder in the land, in which she had a life interest, for the purpose of borrowing $5,000 from the Federal Land Bank of Columbia, a corporation. The order of the clerk and judge's confirmation are set forth. The further allegations are as follows:
"That as these affiants are informed and believe, and so allege, the said judgments marked `Exhibits B and C' are void, irregular, and erroneous, and were entered and made while these petitioners were infants, and that these judgments were signed and entered without compliance with the statutes governing the mortgaging of the said infant petitioners' property, which was done when these infants were minors, and that these judgments were signed and entered without any examination of any disinterested parties, without affidavits taken and filed in the records, without the necessary legal proof that the loan was necessary or advantageous to the infants' estate, without a finding that the wards' interests would be materially promoted by the act, when, in fact, it was not, and without complying with the laws governing the same.
"That at the time said orders were made there was no proper compliance with the law, and there was no necessity for said loan or encumbrance of the estate of these infants, and that under such circumstances the said guardian, Mrs. Ella Yeoman Quick, gave a mortgage on the *Page 564 
said property in the sum of $5,000 to the Federal Land Bank of Columbia, through the Raeford Mutual Farm Loan Association, and that said mortgage is void, irregular, and erroneous, and that it should be canceled from the said record and removed as a could on the title of these infants in their estate, and the said Federal Land Bank of Columbia, a corporation, and the Raeford Mutual Farm Loan Association should be required to cancel the said purported mortgage, and remove it from the record.
"That neither the judge of the Superior Court nor the clerk of the Superior Court made or entered any judgment directing the exclusive method of the use of the said money to be applied and secured for purposes and trusts named by the judge, and it did not appear that the said mortgage or loan was advantageous to the infants in any way, and that by reason thereof the said judgments, `Exhibits B and C,' are void, irregular, and erroneous.
"And it further appears that the said guardian was improperly ordered to mortgage the said property for the term of years not fixed by the court in its decree, and that it has been mortgaged from that said time, and the said mortgage still appears on record as a lien and encumbrance against the property.
"That by reason of the matters herein set forth your petitioners are entitled to have the remainder estate in their said property freed and cleared of any encumbrances of record, and are entitled to have the said void, irregular, and erroneous judgments, referred to as `Exhibits B and C,' vacated and stricken from the record.
"Wherefore, your petitioners pray that the court will grant the following relief:
"(a) That the court will enter an order in the cause declaring the judgments referred to as `Exhibits B and C' void; (b) that the court will declare the mortgage void, and not a lien or encumbrance on the property or estate of the infant petitioners; (c) that the court will require the Federal Land Bank of Columbia and the Raeford Mutual Farm Loan Association to appear in this matter and show cause why these judgments should not be declared void, and why they should not remove the purported lien of their mortgage from the record; (d) for the costs of this action; and for such other and further relief as the court may deem proper."
In response to the petition the Federal Land Bank of Columbia answered same, admitting that the petitioners were infants when the deed of trust was executed, the ownership of the petitioners in the remainder of the property in which Ella Yeoman Quick had a life estate; and, as a defense, alleged, in part, that "the clerk of the Superior Court of Hoke County entered his order in compliance with the statutes of the State of *Page 565 
North Carolina, authorizing said Ella Yeoman Quick, guardian, to execute a mortgage deed to the Federal Land Bank of Columbia, this respondent, to secure the payment of a loan of five thousand ($5,000) dollars, declaring in said order or judgment that the same should be a lien upon the interest of said minors as security for said loan.
"(c) That thereafter the presiding judge, in connection with said petition of Ella Yeoman Quick, and the order of the clerk of the Superior Court of Hoke County, confirmed said judgment of said clerk of the Superior Court of Hoke County.
"(d) That the terms and conditions of the mortgage to be given to the Federal Land Bank of Columbia to secure the payment of said loan of $5,000 were well known to the petitioners, to the clerk of the Superior Court of Hoke County, and to the presiding judge, said terms being then prescribed by rules and regulations made pursuant to the statutes of the United States of America, duly and regularly passed by the Congress of the United States; and that reference in said petition was made to the securing of said loan by a mortgage to said The Federal Land Bank of Columbia, this respondent, and the order or judgment of the clerk of the Superior Court of Hoke County, specifically by name, authorized the execution of a mortgage deed to the Federal Land Bank of Columbia.
"(e) That the proceeds derived from the loan made by The Federal Land Bank of Columbia to said Ella Yeoman Quick, guardian, for said minors, were used for the benefit of said farm and for its improvement and enhancement in value; and in accordance with the purposes stated in the application for said loan, a copy of said application being hereto attached and marked `Exhibit A,' and asked to be taken as a part of this paragraph of the response to the petition as fully as if herein specifically set out.
"(f) That said mortgage was duly executed by the said Ella Yeoman Quick, guardian, on 9 January, 1920, and was duly recorded in Book 22, at p. 62, of the records in the office of the register of deeds for Hoke County; and that since said date, for a long period of time, the payments due under said note secured by said mortgage deed have been met.
"(g) That said petitioner, Ella Yeoman Quick, both individually and as guardian, having accepted the benefits of said loan, is estopped to deny the legality thereof and the title and interest of this respondent; and that the other petitioners named in said petition, being represented by said Ella Yeoman Quick, guardian, who made said petition for authority to borrow said sum and execute said mortgage, are estopped to deny the legality of said mortgage and the title and interest of this respondent.
"Wherefore, your respondent prays that the prayer of the petitioners be denied; that said mortgage deed referred to in the petition be declared a subsisting and outstanding legal lien covering the interest of said *Page 566 
petitioners; and that your respondent have such other and further relief as to the court may seem proper and necessary, together with its costs incurred in this cause."
"Exhibit A," made a part of the response, is headed: "Application for Loan Through Raeford National Farm Loan Association the Federal Land Bank of Columbia Under the Federal Farm Loan Act." It sets out in detail the facts in the application, and contains the following: "6. Does the applicant desire this loan, (a) for the purpose of purchasing land for agricultural uses? _______; (b) for equipment as defined by the Federal Farm Loan Board to be used in connection with the mortgaged farm? _______; (c) for fertilizers to be used thereon? _______; (d) for live stock necessary in the proper and reasonable operation of the same? $2,000.00; (e) to provide buildings to be erected on the mortgaged land? $2,000.00; (f) to provide for the improvement of the mortgaged land, improvement to be such as defined by the Federal Farm Loan Board, $1,000.00." This was signed, "Mrs. A. A. Quick, applicant."
The Loan Committee of the National Farm Loan Association, in the report, has this in it: "The statements made in the application are correct, with the following exceptions: ______. Remarks and additional information: ______. Findings: We find and report the value of the land is ....... $14,000.00. That the value of the improvements is ....... $3,000.00, making a total of ....... $17,000.00. What do you think of the ability of applicant to pay the loan applied for and interest thereon out of income from the land after deducting necessary expenses and support of the family?Good. Do you approve of this loan and recommend that it be allowed? Yes. This 30 August, 1919." Then there is set forth by the directors: "Approval of Loan and Admission to Membership by Board of Directors of Raeford National Farm Loan Association."
In the reply of the petitioners to the response of the Federal Land Bank of Columbia, among other things, is the following: "Paragraph (e) is denied, the petitioners alleging the truth to be, that they received no benefits from said loan, and the proceeds did not improve or enhance the value of their interest, and said loan was not necessary, in that: (a) The property had buildings upon it prior to the loan, and it had timber of value upon it, and that as such, these petitioners having only a remainder interest, were best benefited by the property remaining in the condition in which it was. (b) That at the time the buildings were adequate in so far as the petitioners' interests were concerned, and that for the property to remain as it was would have best served the interests of these petitioners, who were minor children of tender years at said time. (c) That according to the very response filed by the defendant bank in this *Page 567 
action, as appears on `Exhibit A,' these petitioners, in regard to the then purported loan, were not intended to receive the full benefit of a loan, but it was the intention to benefit two individuals, Mrs. A. A. Quick (as an individual) and her husband (these petitioners' step-father), A. A. Quick, for it appears on said exhibits that $2,000.00 was intended for live stock, $2,000.00 for additional buildings, and $1,000.00 for improvement to buildings, and that none of these things were necessary at the time for the petitioners, nor did they at the time nor since receive any benefit, and, if anything, the doing of such acts would injure and damage their interests rather than improve their interests, or benefit their interests, and according to the laws of North Carolina protecting the interest of minors, the doing of such acts were contrary to law."
The defendants demurred ore tenus, and "moved for judgment upon the pleadings, dismissing the motion and petition in the cause, for that the petition does not set up a cause of action, or such grounds for relief as permitted by law."
The court below sustained the demurrer. The petitioners made several exceptions and assignments of error, among them: "In that the court erred in signing the judgment as set out in the record." An appeal to the Supreme Court was taken by the petitioners. The assignments of error and necessary facts will be set forth in the opinion.
This cause was before this Court on the petition of The Federal Land Bank of Columbia to remove same to the District Court of the United States for the Middle District of North Carolina. The court below refused the petition, and the judgment, on appeal, was affirmed by this Court. Ex parteQuick, 206 N.C. 627.
N.C. Code, 1931 (Michie), sec. 2180, is as follows: "On application of the guardian by petition, verified upon oath, to the Superior Court, showing that the interest of the ward would be materially promoted by the sale or mortgage of any part of his estate, real or personal, the proceeding shall be conducted as in other cases of special proceeding; and the truth of the matter alleged in the petition being ascertained by satisfactory proof, a decree may thereupon be made that a sale or mortgage be had by such person, in such way and on such terms as may be most advantageous to the interest of the ward; but no sale or mortgage shall be made until approved by the judge of the court, nor shall the same be valid, nor any conveyance of the title made, unless confirmed and directed by the judge, and the proceeds of the sale or mortgage shall be *Page 568 
exclusively applied and secured to such purposes and on such trusts as the judge shall specify. The guardian may not mortgage the property of his ward for a term of years in excess of the term fixed by the court in its discretion. The word `mortgage,' whenever used herein, shall be construed to include deeds in trust." Ipock v. Bank, 206 N.C. 791, 95 A.L.R., 836.
We have examined with care the petition of Mrs. Ella Yeoman Quick, guardian of the infant petitioners, to place a lien on the land in controversy of the infants, which they held in remainder, to the extent of $5,000. Also the judgment of the clerk and confirmation of the presiding judge. It is loosely and inartificially drawn. The statute should be strictly complied with.
In Moore v. Gidney, 75 N.C. 34 (39), Bynum, J., who in speaking of the statutory requirements for a valid judgment against an infant, says: "So careful is the law to guard the rights of infants, and to protect them against hasty, irregular, and indiscreet judicial action. Infants are in many cases the wards of the courts, and these forms enacted as safeguards thrown around the helpless, who, often the victims of the crafty, are enforced as being mandatory and not directory only. Those who venture to act in defiance of them, must take the risk of their action being declared void or set aside." In re Reynolds, 206 N.C. 276.
In The Federal Land Bank of Columbia's response to the petition of the petitioners is the following: "That said mortgage was duly executed by the said Ella Yeoman Quick, guardian, on 9 January, 1920, and was duly recorded in Book 22, at p. 62, of the records in the office of the register of deeds for Hoke County; and that since said date, for a long period of time, the payments due under said note secured by said mortgage deed have been met."
This action was brought on 12 December, 1933, nearly 14 years after the transaction was consummated. Of course, the petitioners were under age, and this petition was filed after they became of age. We think the petition inferentially alleges this, and the contentions by the Federal Land Bank of Columbia to the contrary untenable. There is a presumption that the record speaks the truth and the statute complied with, if not too glaring to the contrary. With this presumption in favor of the Federal Land Bank of Columbia, we hold that the deed of trust as to $3,000.00 is valid. As to $2,000.00 we cannot so hold. The record is that the Federal Land Bank of Columbia had notice that $2,000.00 of the $5,000.00 loan did not show "that the interest of the ward would be materially promoted by the sale or mortgage of any part of his estate." Section 2180, supra. The record clearly shows by the "Exhibit A" set forth in the Federal Land Bank of Columbia's response, that $2,000.00 of the $5,000.00 was "for live stock necessary in the proper and reasonable *Page 569 
operation of the same," on the farms in which the petitioners had a remainder. The other $3,000.00 was — $2,000.00 "to provide buildings to be erected on the mortgaged land," and $1,000.00 "to provide for the improvement of the mortgaged land, improvements to be such as defined by the Federal Farm Loan Board."
It is clear as the noonday sun that the wards who had a remainder in the land, their interest would not "be materially promoted" by $2,000.00 — being used to purchase live stock to operate the farm. The $2,000.00, included in the $5,000.00 loan, was as to the infants null and void.
For the reasons given, the judgment is
Modified and affirmed.