CYNTHIA CLAY, Administrator, Estate of Elsie Clay, Plaintiff v.
ROBERT E. MONROE, Guardian, Estate of Elsie Clay, Defendant

No. COA07-1136

(Filed 1 April 2008)

**1. Guardian and Ward— sale of property—no independent appraisal—no breach of fiduciary duty**

A guardian did not breach his fiduciary duties in the sale of a ward's property in not obtaining an independent appraisal of the properties before the sale. Comparative market analysis (used here) and the tax value assessed by the county are also allowed as evidence of value.

**2. Guardian and Ward— sale of property—value of property— no deception**

There was no genuine issue of fact as to whether a guardian breached his fiduciary duty where plaintiff presented an appraisal, prepared years later, which opined that the properties

were worth more than the court-approved sale price. Plaintiff wholly failed to present evidence that defendant practiced a deception by false allegations and false evidence, or by industriously concealing material facts.

**3. Fraud— constructive—sale of property by guardian—summary judgment for guardian**

The trial court properly granted a guardian's motion for summary judgment on a claim for constructive fraud arising from the sale of the ward's property. The claim that defendant sought to benefit himself through attorney fees has been expressly rejected, and there is no evidence that defendant had any relationship with the respective purchasers before or after the sale of the property.

Appeal by plaintiff from orders entered 28 September 2006 and 29 May 2007 by Judge J.B. Allen, Jr. in Wake County Superior Court. Heard in the Court of Appeals 5 March 2008.

*Hairston, Lane, Brannon, P.L.L.C., by Anthony M. Brannon, for plaintiff-appellant.*

*Troutman Sanders, L.L.P., by Gary S. Parsons, Hannah G. Styron and Whitney Waldenberg, for defendant-appellee.*

TYSON, Judge.

Cynthia Clay ("plaintiff") appeals from order granting Robert Monroe's ("defendant") motion for summary judgment. We affirm.

## I. Background

On 30 March 1999, the Wake County Clerk of Superior Court appointed defendant as the guardian of the estate of Elsie Clay ("Clay"). On 20 August 1999, defendant petitioned the Clerk of Superior Court for Wake County ("the superior court") for the sale of a 1.33 acre tract of property owned by Clay. Defendant's petition was based upon Clay's inability to pay her monthly expenses and past debts. On 30 November 1999, the superior court entered an order granting defendant's petition and the property was sold for $52,500.00 after upset bids.

In March 2000, defendant petitioned the superior court for the sale of a 22.23 acre tract of property owned by Clay. The superior court entered an order directing the sale of the property. Defendant

accepted an initial bid for $225,000.00, but after multiple upset bids and approval by the superior court, the property sold for $410,000.00. Defendant remained the guardian of Clay's estate until her death in April 2002.

On 4 January 2005, plaintiff, as administrator of the estate of Clay, filed an amended complaint against defendant seeking damages for breach of fiduciary duty and constructive fraud. On 28 December 2005, defendant filed an answer denying all material allegations therein and affirmatively pled the defenses of statute of limitations, truth, best interest, and reasonableness.

Subsequently, both parties filed motions for summary judgment. On 28 September 2006, the trial court entered an order granting defendant's motion for summary judgment and dismissing all of plaintiff's claims with prejudice. On 6 October 2006, plaintiff filed a motion for a new hearing pursuant to Rule 59 of the North Carolina Rules of Civil Procedure. On 22 December 2006, defendant moved for costs. On 29 May 2007, the trial court entered orders denying plaintiff's motion for a new hearing and granting defendant's motion for costs. Plaintiff appeals from all orders entered.

## II. N.C.R. App. P. 28(b)(6)

Rule 28(b)(6) of the North Carolina Rules of Appellate Procedure states, in relevant part, "[a]ssignments of error not set out in the appellant's brief, or in support of which no reason or argument is stated or authority cited, will be taken as abandoned." N.C.R. App. P. 28(b)(6) (2007). Here, plaintiff assigned error to the trial court's orders: (1) granting defendant's motion for summary judgment; (2) denying plaintiff's motion for a new summary judgment hearing; and (3) granting defendant's motion for costs. Plaintiff's brief only addresses the trial court's order granting defendant's motion for summary judgment. Plaintiff's remaining unargued assignments of error are deemed abandoned pursuant to N.C.R. App. P. 28(b)(6).

## III. Issue

Plaintiff argues the trial court erred by granting defendant's motion for summary judgment.

## IV. Summary Judgment

### A. Standard of Review

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

CLAY v. MONROE

[189 N.C. App. 482 (2008)]

affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law. The party moving for summary judgment ultimately has the burden of establishing the lack of any triable issue of fact.

A defendant may show entitlement to summary judgment by (1) proving that an essential element of the plaintiff's case is non-existent, or (2) showing through discovery that the plaintiff cannot produce evidence to support an essential element of his or her claim, or (3) showing that the plaintiff cannot surmount an affirmative defense. Summary judgment is not appropriate where matters of credibility and determining the weight of the evidence exist.

Once the party seeking summary judgment makes the required showing, the burden shifts to the nonmoving party to produce a forecast of evidence demonstrating specific facts, as opposed to allegations, showing that he can at least establish a *prima facie* case at trial.

We review an order allowing summary judgment *de novo*. If the granting of summary judgment can be sustained on any grounds, it should be affirmed on appeal.

*Wilkins v. Safran*, 185 N.C. App. 668, 672, 649 S.E.2d 658, 661 (2007) (internal citations and quotations omitted).

## B. Analysis

Plaintiff argues the trial court erred by granting defendant's motion for summary judgment because genuine issues of material fact existed regarding whether defendant breached his fiduciary duties or, in the alternative, committed constructive fraud by failing to have Clay's property appraised before its sale. We disagree.

## 1. Fiduciary Duty

[1] The requirements for the sale of a ward's property by a guardian are set out in N.C. Gen. Stat. § 35A-1301(b):

A guardian may apply to the clerk, by verified petition setting forth the facts, to sell, mortgage, exchange, or lease for a term of more than three years, any part of his ward's real estate, and such proceeding shall be conducted as in other cases of special proceedings . . . The clerk may order a sale, mortgage, exchange, or lease to be made by the guardian in such way and on such terms

as may be most advantageous to the interest of the ward, upon finding by satisfactory proof that:

(1) The ward's interest would be materially promoted by such sale, mortgage, exchange, or lease, or

(2) The ward's personal estate has been exhausted or is insufficient for his support and the ward is likely to become chargeable on the county, or

(3) A sale, mortgage, exchange, or lease of any part of the ward's real estate is necessary for his maintenance or for the discharge of debts unavoidably incurred for his maintenance or

(4) Any part of the ward's real estate is required for public purposes, or

(5) There is a valid debt or demand against the estate of the ward; provided, when an order is entered under this subdivision, (i) it shall authorize the sale of only so much of the real estate as may be sufficient to discharge such debt or demand, and (ii) the proceeds of sale shall be considered as assets in the hands of the guardian for the benefit of creditors, in like manner as assets in the hands of a personal representative, and the same proceedings may be had against the guardian with respect to such assets as might be taken against an executor, administrator or collector in similar cases.

N.C. Gen. Stat. § 35A-1301(b) (2005). When an order for sale has been issued by the clerk and approved by the court, a presumption arises that the statutory requirements have been met. *In re Quick and Yeoman v. Bank*, 208 N.C. 562, 568, 181 S.E. 746, 749 (1935).

Here, defendant determined that Clay's income was inadequate to meet her monthly expenses and filed two separate Petitions for Sale of Real Property with the Clerk. After numerous upset bids, the superior court approved defendant's petition and entered two orders authorizing and directing the sale of the respective properties. Plaintiff argues defendant breached his fiduciary duty by failing to procure an independent appraisal of the value of the properties prior to sale.

N.C. Gen. Stat. § 35A-1301(b) does not require a guardian to obtain an appraisal or to submit the appraised value to the court. No North Carolina statutory or case law supports the proposition that

an appraisal is the only valid method of determining the value of property. On the contrary, this Court has permitted expert testimony based on a comparative market analysis as evidence of property value. *City of Wilson v. Hawley*, 156 N.C. App. 609, 615, 577 S.E.2d 161, 165 (2003). The comparative market analysis used by the defendant in valuing the property is an acceptable method in North Carolina. *Id.*

Also, the *ad valorem* tax value assessed by a county is also allowed as evidence of the value of real property. N.C. Gen. Stat. § 105-283 (2005). Defendant was not statutorily required to obtain an appraisal value nor did the superior court request such documentation prior to the approval of the sales. We hold defendant complied with the statutory requirements of N.C. Gen. Stat. § 35A-1301(b).

[2] Having determined defendant complied with the statutory requirements, we address whether defendant can be held accountable for any alleged loss sustained from the sale of his ward's property. This issue was first addressed over 160 years ago in *Harrison v. Bradley*, 40 N.C. 136 (1847). Our Supreme Court stated:

> It was incumbent on the court to direct an inquiry as to the suitableness of the sale at the price, taking into view the income from the land, the ward's age, and the condition of her estate. Certainly, a guardian is not to answer for error·in the court in those respects; for he cannot undertake to set himself above the court, whose advice he asks. *To make him responsible, if he be so at all, for a loss to the ward, something more than a loss and an error of a court must be made to appear. It ought, at least, to be established, that he practiced a deception on the court·by false allegations and false evidence, or by industriously concealing material facts.* However, it is not our purpose at present to lay down any rule as to the liability of guardians for losses to wards from sales of their land. It will be sufficient to do so when a case of such injury shall come up.

*Id.* at 144-45 (emphasis supplied). Since *Harrison*, no other claimants have attempted to challenge on appeal the reasonableness of the price received by a guardian for property sold after express approval and confirmation by the clerk of superior court and a superior court judge. This procedural safeguard exists for two reasons: (1) to protect the ward from unscrupulous practices by a court-appointed fiduciary, and (2) to protect the fiduciary from the venality of heirs who did not see fit to participate in the ward's care during his or her life,

but who later emerge and attack the guardian's work after the ward's death in an effort to increase their inheritance.

Although the Court in *Harrison* did not set out a bright line rule establishing the liability of guardians, we hold the Court established a minimum level of culpability that a guardian's conduct must reach before he or she can be held liable for discrepancies between the purported value of a ward's property and the sale price. 40 N.C. at 144-45. Here, plaintiff wholly failed to present any evidence that defendant practiced a "deception on the court by false allegations and false evidence, or by industriously concealing material facts." *Id.* at 145. Plaintiff's only evidence to show a higher value was an appraisal, prepared years later, which opined the properties were worth more than the court-approved sale price. The fact that defendant's comparative market analysis and asserted tax value tended to show a lower value than an appraiser's *post hoc* opinion of value, standing alone, does not create a genuine issue of material fact of whether defendant breached his fiduciary duty. The trial court properly granted defendant's motion for summary judgment on plaintiff's breach of fiduciary duty claim.

## 2. Constructive Fraud

**[3]** To assert a claim of constructive fraud, plaintiff must allege:

> (1) a relationship of trust and confidence, (2) *that the defendant took advantage of that position of trust in order to benefit himself,* and (3) that plaintiff was, as a result, injured. Intent to deceive is not an element of constructive fraud. The primary difference between pleading a claim for constructive fraud and one for breach of fiduciary duty is the constructive fraud requirement that the defendant benefit himself.

*White v. Consolidated Planning, Inc.,* 166 N.C. App. 283, 294, 603 S.E.2d 147, 156 (2004) (emphasis supplied) (internal citations omitted), *disc. rev. denied,* 359 N.C. 286, 610 S.E.2d 717 (2005). In order to satisfy the second element of constructive fraud, a plaintiff must allege, "the benefit sought was more than a continued relationship with the plaintiff or *payment of a fee to a defendant for work it actually performed." Id.* at 295, 603 S.E.2d at 156 (emphasis supplied) (citing *Sterner v. Penn,* 159 N.C. App. 626, 631, 583 S.E.2d 670, 674 (2003)).

Here, under her second claim for relief for constructive fraud, plaintiff alleged defendant sought to: (1) "benefit himself and/or his law office by charging attorney's fees" and (2) "benefit himself and/or

his law office from an on-going and existing relationship with the purchasers of the property. . . ."

Plaintiff's first allegation has been expressly rejected by this Court. *See White,* 166 N.C. App. at 295, 603 S.E.2d at 156; *Sterner,* 159 N.C. App. at 631-32, 583 S.E.2d at 674. Regarding plaintiff's second allegation, the record is wholly devoid of any evidence that defendant had any relationship with the respective purchasers prior to or after the sale of Clay's property. Plaintiff failed to establish a *prima facie* case of constructive fraud. *White,* 166 N.C. App. at 294, 603 S.E.2d at 156. The trial court properly granted defendant's motion for summary judgment on plaintiff's constructive fraud claim. This assignment of error is overruled.

## V.  Conclusion

Plaintiff failed to show any genuine issues of material fact existed regarding defendant's approved sale of Clay's property. The trial court properly granted defendant's motion for summary judgment. The trial court's order is affirmed.

Affirmed.

Judges McGEE and STEPHENS concur.