HCW RETIREMENT AND FINANCIAL SERVICES, LLC, a NORTH CAROLINA LIMITED LIABILITY COMPANY; HCWRFS, LLC, FORMERLY HILL, CHESSON & WOODY RETIREMENT & FINANCIAL SERVICES, LLC, a NORTH CAROLINA LIMITED LIABILITY COMPANY; AND WILTON R. DRAKE, III, PLAINTIFFS v. HCW EMPLOYEE BENEFIT SERVICES, LLC, a NORTH CAROLINA LIMITED LIABILITY COMPANY; HILL, CHESSON & WOODY, INC., a NORTH CAROLINA CORPORATION; PRESTWICK SIX, LLC, a NORTH CAROLINA LIMITED LIABILITY COMPANY; FRANK S. WOODY, III, AND TODD T. YATES, DEFENDANTS

No. COA11-1479

(Filed 7 August 2012)

**1. Appeal and Error—interlocutory order—substantial right— denial of arbitration**

An appeal from an interlocutory order denying arbitration was immediately appealable because it involved a substantial right which might be lost if appeal was delayed.

**2. Arbitration and Mediation—arbitration clause—duty of good faith—fiduciary duties—operating agreement**

The trial court erred by ruling that plaintiffs' claims, which rested on allegations that defendants breached the duty of good

faith and breached their duties as fiduciaries, were not subject to arbitration. These claims arose out of or were in connection with, or in relation to the operating agreement, a fact which brought those claims within the scope of the operating agreement's arbitration clause.

**3. Arbitration and Mediation—waiver—utilization of discovery procedures not available in arbitration—deposition**

The trial court did not err by determining that defendants had waived their right to have the relevant claims submitted to arbitration by utilizing discovery procedures (deposing plaintiff Drake concerning the facts underlying the relevant claims) that would not necessarily have been available in arbitration.

Appeal by defendants from order entered 9 September 2011 by Judge Charles C. Lamm, Jr., in Orange County Superior Court. Heard in the Court of Appeals 21 March 2012.

*Northen Blue, LLP, by J. William Blue, Jr., for plaintiff-appellees.*

*Coats & Bennett, PLLC, by Anthony J. Biller, Emily M. Haas, and Keith D. Burns, for defendant-appellants Frank S. Woody, III, and Todd T. Yates.*

ERVIN, Judge.

Defendants Frank S. Woody, III, and Todd T. Yates appeal from an order denying their motion to compel arbitration with respect to the twelfth and thirteenth claims for relief asserted in the First Amended Complaint filed by Plaintiffs HCW Retirement and Financial Services, LLC; HCWRFS, LLC; and Wilton R. Drake, III.[1] On appeal, Defendants argue that the trial court erred by denying their motion to compel arbitration with respect to the claims in question on the grounds that a contract between Defendants and Mr. Drake contained language providing for arbitration of these claims and that Defendants had not waived the right to have these claims submitted to arbitration by participating in discovery. Upon careful consideration of Defendants' challenges to the trial court's order in light of the record and the

---

1. Although Plaintiffs asserted claims against several additional defendants, those additional parties defendant are not affected by the claims at issue in this appeal. As a result, the only parties defendant involved in the present appeal are Defendants Woody and Yates, who will be referred to as Defendants throughout the remainder of this opinion.

applicable law, we conclude that, while the trial court erred by determining that the claims in question were not covered by the arbitration clause, it did not err by determining that Defendants had waived the right to have these claims resolved in arbitration, so that its order should be affirmed.

## I. Factual Background

### A. Substantive Facts

Plaintiffs HCW Retirement & Financial Services, LLC ("RFS"), and HCWRFS, LLC, ("HCWRFS") are North Carolina limited liability companies, while Plaintiff Wilton Drake is a financial planner who offers retirement planning services. Defendants are financial advisers who offer investment and insurance services. Between the late 1990s and 2010, the parties were involved in various cooperative or collaborative business ventures that revolved around the provision of financial or investment advice.

On 12 August 2003, Defendants and Plaintiff Drake formed Prescott Office Management, LLC, for the purpose of entering into an office sharing arrangement pursuant to which Prescott would purchase part of an office condominium. At the conclusion of that process, Prescott became a 50% owner of Prestwick, which owns an office condominium utilized by the parties for the purpose of conducting their businesses.

At the time that they organized Prescott, the parties executed and signed an Operating Agreement that governed their rights and responsibilities with regards to Prescott and included an arbitration provision. Initially, each of the three principals had a one-third interest in and served as a manager of Prescott. In addition, the Operating Agreement provided that decisions involving the limited liability company required the approval of all three managers. In September, 2010, Defendants amended the Operating Agreement to provide that managers would be elected by majority vote and that decisions concerning Prescott could be made by a vote of 66% of the members; elected themselves managers for an indefinite term; and adopted other amendments to the Operating Agreement that gave Defendants increased authority over Prescott's operations.[2] Using the authority granted to them by these amendments to the Operating Agreement,

2. In both his deposition and in an affidavit, Mr. Drake admitted that Defendants had the authority to adopt these amendments to the Operating Agreement.

Defendants procured the non-renewal of Mr. Drake's lease for space in the Prestwick building when his lease expired in 2010.

### B. Procedural History

On 26 January 2011, Plaintiffs filed a First Amended Complaint[3] in which they sought 1) damages for an alleged violation of partnership obligations; 2) damages for trade name infringement; 3) cancellation of N.C. Trademark Registration No. T-020223; 4) a determination that Defendant EBS is not the owner of the trademark "Experience the Benefit"; 5) a determination that registration of the trademark "Experience the Benefit" had been obtained fraudulently; 6) cancellation of N.C. Trademark Registration No. T-020247; 7) a determination that Defendant EBS is not the owner of the HCW logo; 8) a determination that registration of the HCW logo had been fraudulently obtained; 9) cancellation of N.C. Trademark Registration No. T-020312; 10) a determination that Defendant EBS is not the owner of the trade name "Hill, Chesson & Woody"; 11) that registration of the trade name "Hill, Chesson & Woody" had been fraudulently obtained; 12) damages for breach of the duty of good faith by Defendants Yates and Woody; 13) damages for breach of fiduciary duty by Defendants Yates and Woody; 14) an accounting; 15) damages for breach of a lease agreement; 16) damages for conversion; and 17) damages for tortious interference with contractual relationships and prospective advantage. On 18 February 2011, Defendants filed an answer in which they denied the material allegations of the First Amended complaint and asserted various defenses to Plaintiffs' claims. In response to the breach of good faith and fair dealing and breach of fiduciary duty claims asserted in the First Amended Complaint, Defendants moved that further litigation be stayed and that these claims be referred to arbitration on the basis of the arbitration clause contained in the Operating Agreement.

After receiving Defendants' motion to compel, Plaintiffs filed a response denying that the claims in question were subject to arbitration and submitted an affidavit executed by Mr. Drake setting out in more detail the factual basis for the twelfth and thirteenth claims asserted in Plaintiffs' First Amended Complaint. On 8 August 2011, Plaintiffs filed a supplemental response to Defendants' motion to compel arbitration in which they asserted that:

---

3. We have not discussed the procedural history of this litigation prior to the filing of the First Amended Complaint given that the claims relevant to the issues that Defendants have raised on appeal were asserted for the first time in that document.

2. . . . Defendants Yates and Woody have refused to respond to discovery propounded by Plaintiffs. . . .

3. . . . Defendants have made use of judicial discovery procedures not available in the arbitration that they seek to compel in that Defendants questioned Plaintiff Drake about the facts and circumstances relating to the Twelfth and Thirteenth Claims for Relief during the deposition of Plaintiff Drake, which was conducted in late July 2011.

. . . .

5. . . . Defendants Yates and Woody have waived arbitration by making use of judicial discovery procedures not available in arbitration, and Plaintiffs have been prejudiced by such discovery.

In an affidavit attached to Plaintiffs' supplemental response, Mr. Drake stated, in pertinent part, that:

3. On July 27, 2011, my deposition was conducted by counsel for Defendants. The deposition began at approximately 9:30 a.m. and ended at approximately 8:00 p.m. . . .

4. During the course of the deposition, I was asked questions about the Twelfth and Thirteenth Claims for Relief in my Amended Complaint[.]. . . Defendants inquired about the facts surrounding my claims as well as the loss and damage that I have suffered as a result of the actions that are the basis of my claims. . . . Defendants provided me a copy of the Affidavit in Opposition to Defendants' Motion to Compel Arbitration that I had previously filed, and questioned me about the Affidavit, including the various exhibits that were attached to the Affidavit. . . .

5. I was represented by counsel during the deposition, and am responsible for the expense incurred in connection with attendance by my counsel at the deposition, including the portion of the deposition that dealt with the questions concerning the Twelfth and Thirteenth Claims for Relief.

6. Previously, Plaintiffs propounded discovery to Defendants Yates and Woody[.] . . . Yates and Woody, through counsel, objected to discovery and refused to substantively respond on the grounds that the claims against them are subject to arbitration.

7. Plaintiffs are prejudiced by Defendants engaging in discovery on the Twelfth and Thirteenth Claims for Relief by ques-

tioning me during my deposition, while Defendants Yates and Woody refuse to respond to discovery that Plaintiffs have propounded to them regarding those same claims. Plaintiffs are further prejudiced by the fact that Defendant Yates was present for most of my deposition.

On 18 August 2011, the trial court conducted a hearing concerning Defendants' motion to compel arbitration. On 9 September 2011, the trial court entered an order denying Defendants' motion in which it found, in pertinent part, that:

3. The Twelfth and Thirteenth Claims for Relief in the First Amended Complaint allege individual claims against Defendants Yates and Woody that are based upon common law duties of good faith and the fiduciary duty owed to Plaintiff Drake as a minority member. Plaintiffs assert that the actions of Defendants Yates and Woody were for the personal benefit of themselves and businesses owned by them, and to the personal detriment of Plaintiff Drake and his businesses, in breach of the common law duties owed by Defendants Yates and Woody. The Claims do not arise out of the Operating Agreement or any alleged breach or violation of the Operating Agreement.

4. After Defendants Yates and Woody filed their motion to compel arbitration of the Twelfth and Thirteenth Claims for Relief, Plaintiffs propounded requests for production of documents to Defendants Yates and Woody. Yates and Woody objected to the discovery on the basis that it was in violation of the arbitration provisions set out in the Prescott Operating Agreement.

5. On July 27, 2011, Defendants conducted the deposition of Plaintiff Drake. During the course of that deposition, counsel for Defendants asked Drake about facts and circumstances related to the Twelfth and Thirteenth Claims for Relief.

6. Plaintiffs incurred expense in connection with the portion of the deposition of Drake related to the facts and circumstances of the Twelfth and Thirteenth Claims for Relief in that Plaintiffs' counsel was present for that portion of the deposition, and Plaintiffs incurred expense for those professional services.

7. While Defendants Yates and Woody have refused to respond to discovery propounded to them, Defendants have utilized and benefited from discovery by questioning Plaintiff Drake concerning matters that relate to the claims Defendants seek to

arbitrate—discovery that would be available in arbitration only if permitted by the arbitrator.

8. Defendants, by examining Plaintiff Drake during the course of his deposition concerning facts and circumstances related to the Twelfth and Thirteenth Claims for Relief, engaged in discovery, which is permitted by the Rules of Civil Procedure; but could occur in arbitration only with permission of the arbitrator as provided at N.C. Gen. Stat. § 1-569.17.

Based on these and other findings, the trial court concluded that:

2. The Twelfth and Thirteenth Claims for Relief fall outside the substantive scope of the arbitration provisions of the Prescott Operating Agreement;

3. That because the specific dispute alleged in the Twelfth and Thirteenth Claims for Relief does not fall within the scope of the arbitration provision of the Prescott Operating Agreement, the dispute is not subject to arbitration;

4. That Defendants have utilized discovery with regard to the Twelfth and Thirteenth Claims for Relief but have failed to respond to discovery propounded to them on those same claims, and that Plaintiffs have been prejudiced;

5. That by their acts and conduct with regard to discovery, Defendants Yates and Woody have impliedly waived any right that they might have to arbitration pursuant to the Prescott Operating Agreement.

Defendants noted an appeal to this Court from the trial court's denial of their motion to compel arbitration.

## II. Legal Analysis

### A. Appealability

[1] "As a preliminary matter, we note that Judge [Lamm's] order denying [Defendants'] motion to compel arbitration is interlocutory 'because it does not determine all of the issues between the parties and directs some further proceeding preliminary to a final judgment.' However, this Court has previously determined that an appeal from an order denying arbitration, 'although interlocutory, is immediately appealable because it involves a substantial right which might be lost if appeal is delayed.' Accordingly, we reach the merits of this appeal."

*Capps v. Virrey*, 184 N.C. App. 267, 269, 645 S.E.2d 825, 827 (2007) (quoting *Martin v. Vance*, 133 N.C. App. 116, 119, 514 S.E.2d 306, 308 (1999) (internal citation omitted), and *Prime South Homes v. Byrd*, 102 N.C. App. 255, 258, 401 S.E.2d 822, 825 (1991) (internal citations omitted)).

### B.  Standard of Review

As a general matter, public policy favors arbitration. However, before a dispute can be ordered resolved through arbitration, there must be a valid agreement to arbitrate. Thus, whether a dispute is subject to arbitration is a matter of contract law. . . . [The determination of whether] a dispute is subject to arbitration involves a two pronged analysis; the court must ascertain both (1) whether the parties had a valid agreement to arbitrate, and also (2) whether "the specific dispute falls within the substantive scope of that agreement." *PaineWebber Inc. v. Hartmann*, 921 F.2d 507, 511 (3d Cir. 1990). This Court has adopted the *PaineWebber* analysis. In the case *sub judice*, the dispositive issue involves the second prong of the analysis (whether the parties' dispute falls within the purview of the arbitration clause).

*Raspet v. Buck*, 147 N.C. App. 133, 135-36, 554 S.E.2d 676, 678 (2001) (citing *Moses H. Cone Hospital v. Mercury Constr.*, 460 U.S. 1, 24-25, 103 S. Ct. 927, 941, 74 L. Ed. 2d 765, 787 (1983); *Johnston County v. R.N. Rouse & Co.*, 331 N.C. 88, 91, 414 S.E.2d 30, 32 (1992); *Ragan v. Wheat First Sec., Inc.*, 138 N.C. App. 453, 455, 531 S.E.2d 874, 876, *disc. review denied*, 353 N.C. 268, 546 S.E.2d 129 (2000); and *Rodgers Builders v. McQueen*, 76 N.C. App. 16, 23-24, 331 S.E.2d 726, 731 (1985), *disc. review denied*, 315 N.C. 590, 341 S.E.2d 29 (1986)). In determining whether Defendants waived their right to have the present dispute submitted to arbitration, this Court has previously stated that:

"Waiver of a contractual right to arbitration is a question of fact." In this regard, "findings of fact, when supported by any evidence, are conclusive on appeal. Conclusions of law, even if stated as factual conclusions, are reviewable. Nevertheless, when there is evidence in the record which supports the trial court's findings of fact, and those findings support its conclusions of law that a party has waived its right to compel arbitration, the decision must be affirmed."

*Moose v. Versailles Condo. Ass'n*, 171 N.C. App. 377, 382, 614 S.E.2d 418, 422 (2005) (quoting *Cyclone Roofing Co. v. LaFave Co.*, 312 N.C.

224, 229, 321 S.E.2d 872, 876-77 (1984), and *Prime South Homes*, 102 N.C. App. at 258, 401 S.E.2d at 825 (internal citation omitted), and citing *Prime South Homes*, 102 N.C. App. at 261, 401 S.E.2d at 827). We will now apply the applicable standards of review to evaluate the merits of Defendants' challenges to the trial court's order.

### C.  Scope of Arbitration Clause

**[2]**  As an initial matter, Defendants contend that the trial court erred by ruling that Plaintiffs' twelfth and thirteenth claims, which rest on allegations that Defendants breached the duty of good faith and breached their duties as fiduciaries, are not subject to arbitration. In support of this argument, Defendants assert that, despite the absence of any dispute over the extent of their compliance with the Operating Agreement, the relevant claims arise from or are related to that agreement. On the other hand, Plaintiffs argue that, given their concession that Defendants' actions did not contravene the provisions of the Operating Agreement, the relevant claims are not subject to arbitration. We believe that Defendants' argument has merit.

The arbitration clause contained in the Operating Agreement provides, in pertinent part, that:

> 14.10  [] Any dispute, controversy or claim arising out of or in connection with, or relating to, this Operating Agreement or any breach or alleged breach [t]hereof shall, upon the request of any party involved, be submitted to, and settled by, arbitration in the State of North Carolina, pursuant to the commercial arbitration rules then in effect[.] . . .

In other words, the applicable arbitration provision requires the parties to arbitrate both disputes "arising out of or in connection with, or relating to, this Operating Agreement" and those "arising out of or in connection with, or relating to . . . any breach or alleged breach" of the Operating Agreement. Thus, we must examine the exact nature of Plaintiffs' claims in order to determine whether they are subject to arbitration.

The twelfth and thirteenth claims set out in Plaintiffs' First Amended Complaint rest upon allegations that:

TWELFTH CLAIM FOR RELIEF
(Breach of Good Faith by Defendants Yates
and Woody as LLC Members)

. . . .

68. In the summer of 2003, Plaintiff Drake, Defendant Yates, and Defendant Woody formed a North Carolina limited liability company known as Prescott Office Management, LLC (hereinafter "Prescott").

69. That Plaintiff Drake, Defendant Yates, and Defendant Woody were each members of Prescott, each holding a one-third interest in the limited liability company and each being a manager of the limited liability company.

70. That Plaintiff Drake, Defendant Yates, and Defendant Woody executed an operating agreement for Prescott and that the operating agreement provided that all the decisions and commitments regarding limited liability company matters should be carried out by the managers of the limited liability company subsequent to the approval of 100% of the members of the limited liability company.

. . . .

74. That in September 2010, without notice or consultation with Plaintiff Drake, Defendants Yates and Woody met and amended the operating agreement of Prescott, making numerous changes, all of which were to the benefit of Defendants Yates and Woody, both personally and to their business, and to the detriment of Plaintiff Drake and his business. . . .

75. That as a result of the amendments, Defendants Yates and Woody had the apparent authority to act on behalf of the limited liability company without the consent or authorization from Plaintiff Drake.

. . . .

78. That the lease signed by Plaintiff RFS as with Prestwick was set to expire on December 31, 2010[.] . . . Defendants Yates and Woody, having taken control of Prescott, attended a meeting of Prestwick and voted to cancel the lease of Plaintiff RFS at the conclusion of its term on December 31, 2010.

79. That the actions of Defendants Yates and Woody were not in the best interest of Prescott or Plaintiff Drake, the remaining member of Prescott, but instead, were for the personal benefit and interest of Defendants Yates and Woody[.] . . .

80. That Defendants Yates and Woody breached their obliga-

tion of good faith to Plaintiff Drake in that Defendants Yates and Woody did not act in good faith or in the best interest of Prescott, but instead, acted in their own best interest and in the interest of other entities that they controlled.

81. That Plaintiff Drake and Plaintiff RFS have been damaged . . . and will incur substantial expense in connection with the new office space that they have been required to rent, and Plaintiffs have suffered additional damages to be further detailed in trial.

THIRTEENTH CLAIM FOR RELIEF
(Breach of fiduciary obligation to minority member)

. . . .

82. That Defendants Yates and Woody, by having unilaterally amended the operating agreement of Prescott, were able to dominate and control its activity.

83. That having amended the operating agreement so as to allow Defendants Yates and Woody to totally control the activities and decisions of the limited liability company, Defendants Yates and Woody, in their capacity of the controlling members of the limited liability company, owed a fiduciary duty to Plaintiff Drake.

84. That Defendants Yates and Woody breached their fiduciary duty by exercising their controlling authority in a way that damaged and harmed Plaintiff Drake, the minority member, in that Defendants Yates and Woody terminated the lease for the office space occupied by Plaintiff Drake's business so that the office space could be occupied by the business of Defendants Yates and Woody.

85. As a result of the breach by Defendants Yates and Woody of the fiduciary duty that they owed to Plaintiff Drake, as a minority member of the limited liability company, Plaintiff Drake has been damaged in that his business has been disrupted, [and] he has incurred substantial expense[.] . . .

As a result, the claims that Plaintiffs have asserted in the relevant claims for relief rest upon actions taken by Defendants using their authority as members of Prescott. Simply put, Plaintiffs have not sought to have Defendants held liable for torts committed against unrelated individuals or that have no relationship to Prescott.

Instead, the relevant claims arise from duties that Defendants allegedly owed to Plaintiffs based solely upon their involvement in Prescott. In the absence of Defendants' involvement in Prescott, the claims at issue here would lack any viability whatsoever. As noted above, the Operating Agreement sets out the parties' rights and responsibilities as members of Prescott. As a result, we conclude that Plaintiffs' claims based upon Defendants' alleged breaches of fiduciary duty and the duty of good faith and fair dealing clearly "aris[e] out of or [are] in connection with, or [in] relati[on] to" the Operating Agreement, a fact which brings those claims within the scope of the Operating Agreement's arbitration clause.

In seeking to persuade us to reach a different result, Plaintiffs emphasize that the relevant claims rest upon alleged violations of "various common law duties that they owe to [Mr. Drake]" rather than upon alleged violations of the Operating Agreement. However, as we have already noted, these "common law duties" would not exist in the absence of the parties' involvement in Prescott and are informed by the authority granted to members and managers under the Operating Agreement,[4] a fact that establishes that the relevant claims are "connected with" or "related to" the Operating Agreement as those terms are used in the arbitration clause.[5]

We utilized similar reasoning in deciding *Ellison v. Alexander*, ____ N.C. App ____, 700 S.E.2d 102 (2010), a case in which, following their decision to purchase shares in the defendant's business, the plaintiffs asserted various tort claims arising from the defendant's alleged misrepresentation concerning the nature and extent of his background and experience. At the time that they made purchases, the plaintiffs signed Subscription and Shareholder Agreements (SSAs) requiring arbitration of "[a]ll disputes and claims arising in connection with this Agreement[.]" *Ellison*, ____ N.C. App at ____, 700 S.E.2d at 106. In seeking to establish that their claims against the defendants were not subject to arbitration, the plaintiffs argued that, since their claims rested upon allegedly tortious acts that the defendant had

---

4. For example, Article 5 of the Operating Agreement specifies the "Rights and Duties of Managers," a subject that appears to be pertinent to Plaintiffs' claims.

5. Although Plaintiffs rely upon our decision in *Raspet*, 147 N.C. App. at 136, 554 S.E.2d at 678, in support of their argument that the relevant claims do not come within the scope of the arbitration provision contained in the Operating Agreement, the arbitration clause at issue there, which applied to "matters in dispute and in controversy between [the members] and concerning, directly or indirectly, the affairs, conduct, operation and management of the" business, lacks the "arising out of," connected with, or "relating to" language found in the arbitration provision at issue here.

committed personally, the claims were not subject to the SSAs' arbitration provision. In rejecting the plaintiffs' argument, we held that:

> . . . Plaintiffs' complaint alleges that their investment in The Elevator Channel was induced by Defendant's misrepresentations. . . . Thus, Plaintiffs' claims stem from the circumstances surrounding their purchase of stock in The Elevator Channel, including whether Defendant misled them into making that investment. As we have previously demonstrated, the SSA spells out the terms and conditions under which Plaintiffs purchased shares in The Elevator Channel. Thus, Plaintiffs' claims are clearly "connected" with the SSAs, since the execution of those agreements was the vehicle by which Plaintiffs effectuated their decision to invest in The Elevator Channel.

*Ellison*, ____ N.C. App at ____, 700 S.E.2d at 110. Similarly, the claims that Plaintiffs have asserted in this case rest upon Defendants' breach of duties that they allegedly owed to Plaintiffs arising from actions that they allegedly took as members and managers of Prescott, a fact which establishes that, as in *Ellison*, the relevant claims clearly relate to or are connected with the Operating Agreement. Thus, for all of these reasons, we conclude that the trial court erred by concluding that the relevant claims were not subject to arbitration.

### D.  Waiver

**[3]** Secondly, Defendants argue that the trial court erred by determining that they had waived the right to have the relevant claims submitted to arbitration by utilizing discovery procedures that would not necessarily have been available in arbitration. We do not find Defendants' argument persuasive.

"Arbitration is a contractual right, and therefore, the right to arbitration may be waived by the conduct of the party seeking to enforce its right. . . . [However, in view of North Carolina's public policy favoring arbitration,] doubts over whether a certain issue is appropriate for arbitration should be resolved in a manner which favors arbitration. This is true 'whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.' " *Capps*, 184 N.C. App at 269-70, 645 S.E.2d at 827 (citing *Miller Bldg. Corp. v. Coastline Assoc. Ltd. Partnership*, 105 N.C. App. 58, 63, 411 S.E.2d 420, 423 (1992), and *Smith v. Young Moving & Storage, Inc.*, 141 N.C. App. 469, 472-73, 540 S.E.2d 383, 386 (2000), *aff'd*, 353 N.C. 521, 546 S.E.2d 87 (2001), and quoting *Cyclone Roofing Co.*, 312 N.C. at 229, 321 S.E.2d at 876 (internal quotation

omitted)). Accordingly, in order "to defeat an attempt to compel arbitration [on waiver-related grounds], the opposing party must demonstrate prejudice." *Id.*

> Our Supreme Court has described the type of prejudice [a party] must demonstrate in order to prevail. "A party may be prejudiced by his adversary's delay in seeking arbitration if (1) it is forced to bear the expense of a long trial, (2) it loses helpful evidence, (3) it takes steps in litigation to its detriment or expends significant amounts of money on the litigation, or (4) its opponent makes use of judicial discovery procedures not available in arbitration."

*Smith,* 141 N.C. App. at 472-73, 540 S.E.2d at 386 (quoting *Servomation Corp. v. Hickory Constr. Co.,* 316 N.C. 543, 544, 342 S.E.2d 853, 854 (1986)).

As we have already noted, the trial court predicated its determination that Defendants had waived their right to insist that the relevant claims be submitted to arbitration on the facts that (1) Defendants questioned Mr. Drake about the "facts and circumstances related to the Twelfth and Thirteenth Claims for Relief" during the course of his deposition; (2) Plaintiffs incurred "expense in connection with the portion of the deposition of Drake related to the facts and circumstances of the Twelfth and Thirteenth Claims for Relief" given that Plaintiff was represented by counsel during his deposition; (3) the discovery relating to the relevant claims in which Defendants had engaged "would be available in arbitration only if permitted by the arbitrator"; and (4) Defendants had refused to respond to discovery requests relating to the relevant claims on the grounds that those claims were subject to arbitration. As a result of the fact that Defendants have not challenged these findings, which appear to have adequate record support, they are conclusive for the purpose of appellate review. *See, e.g., King v. Owen,* 166 N.C. App. 246, 248, 601 S.E.2d 326, 327 (2004) (holding, in connection with a challenge to the denial of a motion to compel arbitration, that, where the appellant "does not challenge any of the trial court's findings," this Court's review is "limited to whether those findings support the trial court's conclusions of law"). Based on these and other findings, the trial court concluded that Defendants' decision to utilize discovery procedures not available as a matter of right during arbitration while refusing to respond to discovery requests propounded by Plaintiffs concerning the same issues prejudiced Plaintiffs and worked a forfeiture of their right to have the relevant claims submitted to arbitration.

Thus, the ultimate question which we must decide is whether the trial court's conclusions reflect a correct application of the pertinent law to the facts.

The extent to which a party has waived the right to have particular claims submitted to arbitration by utilizing discovery procedures that are not available in arbitration has been addressed by this Court and the Supreme Court on a number of occasions. *See, e.g., Moose*, 171 N.C. App. at 385, 614 S.E.2d at 424 (upholding the trial court's determination that the appellant waived the right to compel the submission of a particular dispute to arbitration by conducting extensive discovery, including deposing a party opponent and causing the opposing party to incur significant expenses), and *Prime South Homes*, 102 N.C. App. at 261, 401 S.E.2d at 825-26 (holding that a party had waived the right to have a dispute submitted to arbitration based, in part, upon that party's conduct in taking the deposition of a particular witness).

> Discovery during arbitration, as opposed to litigation, is designed to be minimal, informal, and less extensive. Thus, contrary to a civil case, where a broad right of discovery exists, discovery during arbitration is generally at the discretion of the arbitrator. Moreover, participation in discovery not available at arbitration may constitute a waiver of a party's right to arbitrate.

*McCrary v. Byrd*, 148 N.C. App. 630, 637, 559 S.E.2d 821, 826 (2002) (citing *Palmer v. Duke Power Co.*, 129 N.C. App. 488, 491-92, 499 S.E.2d 801, 803-04 (1998), and *Prime South Homes*, 102 N.C. App. at 260-61, 401 S.E.2d at 826)), *cert. denied*, 356 N.C. 674, 577 S.E.2d 625 (2003). As a result, North Carolina's waiver-related jurisprudence generally establishes that, in the event that a party makes material use of discovery procedures available in ordinary civil litigation that are not available in arbitration, that party has waived the right to insist that claims that were addressed during the discovery process be submitted to arbitration.

The record in this case clearly establishes that, during the deposition of Plaintiff Drake, Defendants questioned him for approximately one hour concerning the matters that underlie the relevant claims. The questioning of Plaintiff Drake concerning the claims which Defendants now seek to have arbitrated occupied some 48 pages of the deposition transcript. During the course of this portion of Plaintiff Drake's deposition, Defendants "prompted [Mr. Drake] to admit certain facts regarding the [claims]." *Capps*, 184 N.C. App. at

272, 645 S.E.2d at 829. Although the exact amount of monetary cost that Plaintiff Drake incurred during the portion of the deposition that addressed the relevant claims is not spelled out in the record, the Supreme Court's description of the showing needed in order to establish the right to arbitration by engaging in discovery does not include a cost-related component. *Servomation Corp.*, 316 N.C. at 544, 342 S.E.2d at 854 (stating that a waiver of the right to have a claim submitted to arbitration can be waived if the party seeking arbitration "makes use of judicial discovery procedures not available in arbitration").[6] Thus, we conclude that the trial court's determination that Defendants waived their right to have the relevant claims submitted to arbitration by engaging in discovery that would not have been available as a matter of right during the arbitration process has adequate support in both the trial court's findings and the record and provides adequate support for its conclusion that the Defendants waived the right to arbitration, separately from its findings regarding expense, and should, for that reason, be affirmed.

We have carefully considered, and ultimately rejected, Defendants' numerous contrary arguments. As an initial matter, Defendant contends that, by participating in the deposition and failing to move for a protective order, Plaintiff has lost the right to utilize the taking of this deposition as the basis for a claim that Defendants had waived the right to have the relevant claims submitted to arbitration. In support of this argument, Defendants rely upon the decision of the United States Court of Appeals for the Fourth Circuit in *Maxum Foundations, Inc. v. Salus Corp.*, 779 F.2d 974 (4th Cir. 1985). The issue before the Court in *Maxum Foundations* was not whether a party had "impliedly waived" the right to insist that one or more claims be submitted to arbitration, but whether the party was subject to statutory default under Section 3 of the Federal Arbitration Act. 9 U.S.C. § 3. Although *Maxum Foundations* noted that "this prin-

---

6. The fact that Plaintiff Drake was represented by counsel during the portion of his deposition that addressed issues relating to the claims at issue here does, contrary to Defendants' contention, permit a determination that he incurred some expense as a result of Defendants' decision to inquire into the relevant claims during that proceeding. After all, as this Court has noted in addressing a similar situation, "'[j]ustice does not require that courts profess to be more ignorant than the rest of mankind.'" *Herbert v. Marcaccio*, _____ N.C. App. ____, ____, 713 S.E.2d 531, 536 (2011) (*quoting State v. Vick*, 213 N.C. 235, 238, 195 S.E. 779, 781 (1939). Moreover, even if the level of expense that Plaintiffs incurred in defending the relevant portion of Plaintiff Drakes' deposition was relatively small, our ultimate decision with respect to the waiver issue for purposes of this case hinges upon the fact that Defendants took advantage of discovery opportunities that were not necessarily available in arbitration rather than upon the expense associated with their use of those discovery techniques.

ciple of 'default' is akin to waiver," it also concluded that "the circumstances giving rise to a statutory default are limited" and declined to find that one had occurred in the case under consideration. *Maxum* at 981 (citation omitted). In view of the absence of any support in our own arbitration-related jurisprudence for the proposition that a party claiming that an opponent had impliedly waived the right to insist upon arbitration has a duty to explicitly object to the conduct upon which the alleged waiver is based and the fact that the issue addressed in *Maxum Foundations* is not identical to the one before us here, we decline to adopt a contemporaneous objection rule of the type contended for by Defendants in this case.

Secondly, Defendants contend that Plaintiffs failed to show that they had incurred the expenses associated with a long trial, lost helpful evidence, or expended significant sums of money during the litigation of the arbitrable claims as a result of Defendants' delay in seeking arbitration. Although Defendants are correct that Plaintiffs failed to make any showing relating to these three *Servomation Corp.* factors, the trial court was entitled to find a waiver of arbitration on the basis of Defendants' decision to question Plaintiff Drake during his deposition concerning the relevant claims without addressing these three additional criteria. As a result, this argument provides no basis for reversing the trial court's order.

Next, Defendants argue that, given that the discovery activities in which they engaged were "limited," those activities were legally "insufficient" to support the trial court's waiver determination. In support of this argument, Defendants cite *Servomation Corp.*, 316 N.C. 543, 342 S.E.2d 853 (1986), *Smith*, 141 N.C. App. 469, 540 S.E.2d 383 (2000), and *Sturm v. Schamens*, 99 N.C. App. 207, 392 S.E.2d 432 (1990), which they contend stand for the proposition that "limited" discovery cannot be the basis for a waiver determination. However, we do not believe that these cases support Defendants' position for at least two different reasons. First, none of these cases involved a situation in which a party seeking arbitration deposed a witness concerning the allegedly arbitrable claims. Secondly, in each of these cases, the reviewing court specifically found that the party resisting arbitration had failed to establish that its opponent had made use of any discovery that would not have been available during the arbitration process. Such is not the case here. Finally, assuming that the "limited" nature of the discovery in which a party seeking to compel arbitration engages is grounds for refusing to find a waiver of arbitration, we do not believe that devoting an hour in a day-long deposi-

tion to allegedly arbitrable claims constitutes "limited discovery."[7] As a result, we conclude that the trial court did not err by determining that a waiver of arbitration had occurred given the "limited" nature of the discovery-related activities in which the party seeking to compel arbitration had engaged.

In addition, Defendants argue, in reliance upon our decision in *Sullivan v. Bright*, 129 N.C. App. 84, 497 S.E.2d 118 (1998), that

[The court] noted that depositions "could occur in arbitration only with permission of the arbitrator" under N.C. Gen. Stat. § 1-569.17. This statute, however, does not prohibit depositions. Further, that permission from the arbitrator would be needed to conduct a deposition is not enough to rise to the level of prejudice supporting waiver.

We do not find Defendants' argument in reliance upon *Sullivan* persuasive.

The first problem with this aspect of Defendants' argument is that *Sullivan* addressed the issue of waiver in light of the specific language of former N.C. Gen. Stat. § 1-567.8(b), which provided that, "[o]n application of a party and for use as evidence, the arbitrators may permit a deposition to be taken . . . of a witness who cannot be subpoenaed or is unable to attend the hearing." In *Sullivan*, we focused our attention on the defendant's failure to prove that the witnesses deposed by the plaintiff would have been available to appear at an arbitration hearing. Our opinion implies that, had the defendant established that these witnesses were available to appear at an arbitration hearing, such a showing would have supported a determination that the plaintiff had engaged in discovery unavailable in arbitration sufficient to support a waiver determination. This understanding of

---

7. In support of their "limited discovery," argument, Defendants contend that their "limited questions" "focused on whether the Twelfth and Thirteenth Claims for Relief arose from, were connected with, or related to the operating agreement and on clarifying Drake's allegations in the Amended Complaint." However, Defendants concede that "the questioning regarding the arbitral claims . . . comprised sixty-one minutes of the day-long deposition," a fact which precludes any determination that Defendants questioned Plaintiff Drake in a cursory manner. In addition, our review of the deposition transcript indicates that Defendants sought to get Plaintiff Drake to admit that he did not claim that Defendants had violated the Operating Agreement and that Defendants questioned Plaintiff Drake in detail about the circumstances surrounding his rental of space in the Prestwick building and the non-renewal of his lease, issues which are clearly relevant to Plaintiffs' contentions with respect to the relevant claims. Thus, the discovery in which Defendants engaged concerning the relevant claims cannot be fairly described as "limited" in terms of either its subject matter or its extent.

*Sullivan* finds support in our decision in *Moose*, 171 N.C. App. at 383-84, 614 S.E.2d at 423, in which we distinguished *Sullivan* on the grounds that, in *Moose*, the defendant had deposed parties who would clearly be available at an arbitration hearing:

> *Sullivan* construed N.C. Gen. Stat. § 1-567.8(b), which makes depositions in arbitration dependent upon witness availability. The issue in *Sullivan* was whether a witness who had been deposed under the Rules of Civil Procedure would have been unavailable to attend an arbitration hearing, and under N.C. Gen. Stat. § 1-567.8(b) subject to deposition in arbitration anyway. Because there was no evidence in the record one way or the other, it is to be expected that the court would find no waiver of arbitration rights. . . . Plaintiffs in this lawsuit are not witnesses who cannot be subpoenaed or are unable to attend the arbitration hearing. They filed the lawsuit and are vitally interested in it. They appeared for their depositions voluntarily, and without being subpoenaed. They are local residents residing at the same addresses where they resided when they filed this lawsuit, and they could have been subpoenaed to attend an arbitration hearing. Defendant did not present any evidence to the contrary. Accordingly, plaintiffs would not be subject to being deposed in arbitration. By taking their depositions before requesting arbitration, defendant took advantage of a discovery procedure not available in arbitration in order to gain access to evidence.

As a result, under N.C. Gen. Stat. § 1-567.8(b) as it existed when *Sullivan* and *Moose* were decided, deposition of a party who was available to attend an arbitration hearing did work a waiver of the right to compel arbitration.

Secondly, the Uniform Arbitration Act was repealed and replaced by the Revised Uniform Arbitration Act effective 1 January 2004. Under the relevant provisions of the Revised Uniform Arbitration Act, an arbitrator has the discretionary authority to authorize depositions regardless of witness availability. As a result, unlike the situation addressed in *Sullivan* and *Moose*, the availability of depositions in arbitration does not hinge upon the extent to which a particular witness is or is not available to testify during an arbitration proceeding.

Finally, even under the former statute, depositions of unavailable witnesses were discretionary with the arbitrator. In *Moose*, we held that, since the deposed parties were clearly available and since this fact eliminated any possibility that the witnesses in question would

be deposed during the course of an arbitration proceeding, the party seeking to compel arbitration had engaged in discovery that was not available during such proceedings. In *Sullivan*, we held that, because the party opposing arbitration had failed to prove that the deposed witnesses were definitely available for arbitration, there was a possibility that these witnesses might be unavailable and would, for that reason, be subject to deposition in the arbitrator's discretion. Although our holding in *Sullivan* could suggest, in accordance with Defendants' contention, that the mere possibility that a witness could be deposed in the arbitrator's discretion would suffice to defeat a finding of waiver, we did not include such an explicit pronouncement in our opinion in *Sullivan*. Moreover, we have not found such a holding in any of our published post-*Sullivan* decisions addressing a waiver of arbitration issue predicated upon the taking of a deposition and do not believe that such a decision would be appropriate given the absence of any guarantee that the arbitrator would allow the party seeking to compel arbitration to depose the witness in question. As a result, for all of these reasons, we conclude that *Sullivan* does not require reversal of the trial court's order.

Finally, Defendants argue that they should not be penalized for having deposed Plaintiff Drake given that, had they not deposed him concerning the relevant claims, they risked "losing the opportunity to depose" Plaintiff Drake unless they asked him "arbitration-related questions during the deposition[.]" However, this aspect of Defendants' argument presupposes that Plaintiff Drake's responses to their deposition questions had a material bearing on the litigation of the allegedly arbitrable claims. In addition, the record does not contain any indication that Defendants sought to have the trial court delay the deposition of Plaintiff Drake until their motion to compel arbitration had been decided or to otherwise protect their right to depose Plaintiff Drake while their motion to compel arbitration was pending. In light of these facts, we do not find this aspect of Defendants' argument persuasive either. As a result, given that "there is evidence in the record which supports the trial court's findings of fact" and given that "those findings support [the trial court's determination] that a party has waived its right to compel arbitration" by engaging in discovery that would not necessarily have been available in arbitration, we conclude that "the [trial court's] decision must be affirmed." *Moose*, 171 N.C. App. at 382, 614 S.E.2d at 422.

IN RE DRAFFEN

[222 N.C. App. 39 (2012)]

III. Conclusion

Thus, for the reasons discussed above, we hold that, even though the trial court erred by concluding that Plaintiff's claims were not encompassed within the arbitration provision contained in the Operating Agreement, it correctly determined that Defendants had waived the right to compel the submission of the relevant claims to arbitration by deposing Plaintiff Drake concerning the facts underlying the relevant claims. As a result, the trial court's order should be, and hereby is, affirmed.

AFFIRMED.

Judges CALABRIA and THIGPEN concur.