# COURT OF APPEALS

OF

## NORTH CAROLINA

AT

### RALEIGH

LUCILLE CROSSMAN, AS ADMINISTRATOR OF THE ESTATE OF LIONEL CROSSMAN, DECEASED, PLAINTIFF-APPELLEE

v.

LIFE CARE CENTERS OF AMERICA, INC.; DEVELOPERS INVESTMENT COMPANY, INC.; LIFE CARE MANAGEMENT, LLC; HENDERSONVILLE MEDICAL INVESTORS, LLC; AND MICHELLE MORROW, DEFENDANTS-APPELLANTS

No. COA12-702

Filed 15 January 2013

**Arbitration and Mediation—arbitration agreement—unenforceable—failure in material terms**

The trial court did not err in a case involving an agreement to arbitrate by denying defendant's motion to dismiss and to compel arbitration. The agreement was unenforceable because it was impossible to perform due to a failure in its material terms.

Appeal by Defendants from orders filed 24 January and 7 February 2012 by Judge Eric L. Levinson in Henderson County Superior Court. Heard in the Court of Appeals on 25 October 2012.

*Smith Moore Leatherwood LLP, by Terrill Johnson Harris and Elizabeth Brooks Scherer, for Defendants-Appellants.*

*Connor & Connor, LLC, by Kenneth L. Connor, for Plaintiff-Appellee.*

STEPHENS, Judge.

1

*Facts and Procedural History*

On 14 January 2011, while serving as administrator of her husband's estate, Ms. Lucille Crossman ("Ms. Crossman") filed a wrongful death complaint against Life Care Centers of America, Inc., Developers Investment Company, Inc., Life Care Management, LLC, Hendersonville Medical Investors, LLC, and Michelle Morrow, (collectively, "Defendants") in Henderson County Superior Court. Defendants own, operate, and manage Life Care Center of Hendersonville ("Life Care" or "the Facility"). The basis of Ms. Crossman's complaint centered on the medical care given Mr. Lionel Crossman ("Mr. Crossman") from 5 July 2007 through 5 March 2009, while he resided at Life Care.

In the year 2000, Mr. Crossman suffered a stroke while on vacation in Florida with Ms. Crossman. That event left him partially paralyzed and with limited communication ability. Despite these physical limitations, Mr. Crossman's mental capacity and decision-making ability remained "cognitively intact," and he continued to live at home with his wife until May of 2004. At that time, Mr. Crossman could no longer remain at home and entered Life Care as a full-time resident. Upon entry, he signed a document entitled "Voluntary Agreement for Arbitration" ("the Arbitration Agreement" or "the Agreement"), which stipulated that the parties agreed to submit all claims arising out of the care and treatment of Mr. Crossman at Life Care to binding arbitration. The Agreement also specified that such disputes would be handled via an arbitration hearing "before a board of three arbitrators selected from the American Arbitration Association ("AAA")" and that the arbitrators would apply the applicable rules of the AAA. The Agreement was not signed by Ms. Crossman.

Mr. Crossman remained at Life Care until 5 March 2009 when he was discharged to the hospital. One week and six days later, on 18 March 2009, he died under hospice care. Ms. Crossman alleges ordinary and medical negligence, fraud, willful and wanton conduct, and unfair and deceptive trade practices on the part of Defendants, claiming that their actions and inaction as caretakers occurring between 5 July 2007 and 5 March 2009 were, together, the proximate cause of Mr. Crossman's injuries[1] and eventual death.

---

1. The injuries allegedly suffered by Mr. Crossman while a resident at Life Care include malnutrition, dehydration, hypernatremia, metabolic encephalopathy, pain and suffering, mental anguish, physical decline, disfigurement, physical impairment, and loss of enjoyment of life.

On 23 February 2011, Defendants filed a motion to dismiss the case and to compel arbitration based on the Agreement, signed by Mr. Crossman when he entered the Facility in May of 2004. On 9 June 2011, the trial court filed an order denying Defendants' motion and requiring the parties to complete discovery as "to the existence of an enforceable agreement to arbitrate." The order halted all discovery on the merits of Ms. Crossman's allegations until the arbitration controversy was resolved. Discovery on the arbitration matter ensued, and the trial court held an evidentiary hearing concerning Defendants' motion to dismiss and compel arbitration on 7 November 2011.

On 24 January 2012, the trial court filed an order denying Defendants' motion to dismiss and to compel arbitration. The Honorable Eric L. Levinson ("Judge Levinson"), Superior Court Judge presiding, found no basis on which to enforce arbitration of the claims made by Ms. Crossman. Despite Mr. Crossman's established capacity to enter into the Arbitration Agreement on his own behalf, the court concluded that the Agreement was unenforceable because (1) it was impossible to perform due to a failure in its material terms, and (2) arbitration agreements signed by decedents do not bind wrongful death beneficiaries. Two weeks later, on 7 February 2012, Judge Levinson filed an order denying Defendant's motion to reconsider. Defendants filed notice of appeal on 22 February 2012.

*Standard of Review*

"[A]n appeal from an order denying arbitration, although interlocutory, is immediately appealable because it involves a substantial right which might be lost if appeal is delayed." *HCW Ret. & Fin. Servs., LLC v. HCW Employee Benefit Servs., LLC*, ___ N.C. App. ___, ___, 731 S.E.2d 181, 185 (2012) (internal quotation marks omitted). "The standard governing our review of this case is that 'findings of fact made by the trial judge are conclusive on appeal if supported by competent evidence, even if . . . there is evidence to the contrary.' . . . 'Conclusions of law drawn by the trial court from its findings of fact are reviewable *de novo* on appeal.' " *Tillman v. Commercial Credit Loans, Inc.*, 362 N.C. 93, 100-01, 655 S.E.2d 362, 369 (2008) (quoting *Lumbee River Elec. Membership Corp. v. City of Fayetteville*, 309 N.C. 726, 741, 309 S.E.2d 209, 219 (1983) and *Carolina Power & Light Co. v. City of Asheville*, 358 N.C. 512, 517, 597 S.E.2d 717, 721 (2004)).

## Discussion

Defendants argue the trial court committed reversible error in denying their motion to dismiss and to compel arbitration on grounds that (1) Ms. Crossman, as a beneficiary of Mr. Crossman's estate, is bound by the Agreement, and (2) the Agreement is not rendered unenforceable by the AAA's policy on healthcare arbitration. We first address whether the Agreement is enforceable at all, given the AAA's policy on healthcare arbitration.

Effective 1 January 2003, the AAA issued a Healthcare Policy Statement ("the Policy Statement") which informed all potential parties to an arbitration agreement arising in the field of healthcare that it would "no longer accept the administration of cases involving individual patients without a post-dispute agreement to arbitrate."[2] In this case, Mr. Crossman signed the Agreement before the dispute arose. Because the Agreement stipulated that arbitration must occur under the rules and procedures of the AAA and be presided over by arbitrators selected from persons approved by the AAA, the trial court determined that the Agreement was unenforceable as impossible to perform due to a failure in material terms.

At the outset, we note that "North Carolina has a strong public policy favoring arbitration." *Raper v. Oliver House, LLC*, 180 N.C. App. 414, 419, 637 S.E.2d 551, 554 (2006). That policy is subject, however, to "[t]he essential thrust of the Federal Arbitration Act, which is in accord with the law of our.[S]tate, . . . to require the application of contract law to determine whether a particular arbitration agreement is enforceable[,] thereby placing arbitration agreements upon the same footing as other contracts." *See id.* (internal quotation marks and citation omitted); *see also Futrelle v. Duke University*, 127 N.C. App. 244, 248, 488 S.E.2d 635, 638 (1997) ("It is essential that parties to an arbitration specify clearly the scope and terms of their agreement to arbitrate as enforcement of arbitration agreements is not subject to less scrutiny than the enforcement of other agreements."). "An [arbitration agreement] is valid, enforceable, and irrevocable except upon a ground that exists at law or in equity for revoking a contract." N.C. Gen. Stat. § 1-569.6 (2011). A contract is unenforceable due to impossibility "if the subject matter of the contract is destroyed without fault of the party seeking to be excused from performance." *Brenner v. Sch. House, Ltd.*, 302 N.C. 207, 210, 274 S.E.2d 206, 209 (1981).

---

2. The Statement can be found at the following uniform resource locator: http://www.adr.org/aaa/ShowPDF?doc=ADRSTG_011014.

Defendants advance three reasons for maintaining that the Arbitration Agreement can be properly performed without employing the AAA. First, they argue that "the only difference [resulting from the Policy Statement] is that the arbitrators would not be chosen from an *official* panel of AAA arbitrators," primarily citing to an opinion of this Court in *Westmoreland v. High Point Healthcare Inc.*, ___ N.C. App. ___, ___, 721 S.E.2d 712 (2012). Defendants contend that "[n]othing prevents the parties or the trial court from requiring that the selected arbitrators be on the AAA's roster." We disagree.

In *Westmoreland*, we addressed the validity of a pre-dispute arbitration agreement signed upon admittance to a nursing facility. *Westmoreland*, ___ N.C. App. at ___, 721 S.E.2d at 715. In pertinent part, the agreement stipulated that any arbitration occurring as a result of that agreement must follow the rules of the AAA and "[t]he arbitration proceeding shall be conducted before one neutral arbitrator selected in accordance with the rules of the AAA." *Id.* at ___, 721 S.E.2d at 719. The trial court in *Westmoreland* ruled that the arbitration agreement was "both procedurally and substantively unconscionable," in part on grounds that it was impossible to perform. *Id.* at ___, 721 S.E.2d at 715. We reversed that order and determined, *inter alia*, that the agreement was not impossible to perform, despite the existence of the Policy Statement, because "[it] did not provide that a AAA arbitrator must be used to conduct the arbitration. . . . [, and the Policy Statement] simply meant that the arbitration could not be conducted under the auspices of the AAA." *Id.* at ___, 721 S.E.2d at 719-20. In so holding, we cited to a decision of the Supreme Court of Alabama, which had determined under similar factual and procedural circumstances that the Policy Statement "did not preclude arbitration of the claims by a non-AAA arbitrator." *Id.* at ___, 721 S.E.2d at 719 (*citing Blue Cross Blue Shield of Ala. v. Rigas*, 923 So.2d 1077, 1092 (Ala. 2005) ("[T]he statement of the AAA provides only that the AAA will not administer a dispute such as this one; it does not provide that [the Appellee's] claims are not arbitrable.")). That rationale is not applicable here.

The Arbitration Agreement in this case reads:

> An arbitration hearing arising under this Arbitration Agreement *shall be held . . . before a board of three arbitrators selected from the American Arbitration Association* . . . . In conducing the hearing and all other proceedings relative to the arbitration of the claim(s),

the arbitrators shall apply the applicable rules of procedure of the AAA.

(Emphasis added). The language used here is different from that employed in *Westmoreland*. Here, the parties specifically require the use of "arbitrators selected from the American Arbitration Association." This language indicates the parties' intention to arbitrate under the auspices of the AAA, unlike the procedure contemplated in *Westmoreland*. By requiring the selection of AAA arbitrators, the Agreement sought to employ an organization that refuses to be so employed. This requirement constitutes an integral and material provision of the Agreement. Accordingly, we hold that the Agreement is unenforceable as impossible to perform.

Defendants contend, second, that even if the Agreement requires arbitrators from the AAA, it is saved by N.C. Gen. Stat. § 1-569.11 because that section "requires the parties to follow the agreed upon method of choosing arbitrators 'unless the method fails.' " We are not persuaded. Section 1-569.11(a) requires the court to appoint an arbitrator if the parties to an agreement to arbitrate agree on a *method* for appointing an arbitrator and that method fails. N.C. Gen. Stat. § 1-569.11(a) (2011). The issue in this case does not revolve around the *process* of selecting a particular arbitrator, but rather the *unavailability* of a pool of arbitrators who have been mandated by the Agreement. Thus, we conclude that the statute does not apply.

Third, and lastly, Defendants argue that the Agreement contains a severability clause, which saves any defect as to the selection of AAA arbitrators or use of AAA procedures. We disagree and note that "[s]evering the unenforceable provisions of the arbitration clause at issue in the instant case would require the Court to rewrite the entire clause, and we decline to do so here." *Tillman*, 362 N.C. at 108, 655 S.E.2d at 373.

Therefore, we affirm the trial court's conclusion that "[t]hese provisions were important, integral, and material terms of the agreement to arbitrate and the impossibility of performing these terms render the Arbitration Agreement unenforceable." Because the Agreement is unenforceable as impossible to perform, we need not address Defendants' further contention that Ms. Crossman is bound by Mr. Crossman's assent to the Arbitration Agreement as his beneficiary.

AFFIRMED.

Judges GEER and McCULLOUGH concur.